No. 32,549

The State of Kansas, *Appellee*, v. Goldie Johnson, *Appellant.*

(50 P. 2d 975)

Opinion filed
November 9, 1935.

*O. A. Wilson,* of Jetmore, for the appellant.

*Clarence V. Beck,* attorney general, *Otho W. Lomax, Earl B. Swarner, Forrest D. Smythe,* assistant attorneys general, and *Richard A. Floyd,* county attorney, for the appellee.

The opinion of the court was delivered by

Dawson, J.: Goldie Johnson was convicted of the crime of being accessory after the fact to the shooting of the sheriff of Ness county.

She appeals, contending that the trial court erred in overruling her demurrer to the state's evidence.

The facts upon which the prosecution was based were these:

On February 9, 1934, Clayton Libby, sheriff of Ness county, received a telephone call from Oakley (on the borders of Thomas and Logan counties) that certain bank robbers were traveling southward on a public highway out of Quinter in Gove county. Sheriff Libby and the county attorney of Ness county intercepted a car with three men in it at Beeler in Ness county. As these officers approached, one of the three men in the other car reached for a gun. The officers gave chase, and eventually came upon the other car. Sheriff Libby got out of his car and was shot in the leg—presumably by one of the three men he had been pursuing. Probably the sheriff had exchanged shots with them, but the record does not state. The pursued trio abandoned their car; impressed another car into their service, and compelled its owner to drive them to a point near Cedarvale in Chautauqua county, nearly 300 miles away. Sheriff Libby examined the abandoned car and the road thereabouts in Ness county. He discovered a pool of blood, evidencing that one

of the trio had been wounded. In the abandoned car was a rifle, a sawn-off shotgun, and an automatic pistol.

Contemporary with these events this defendant, Goldie Johnson, came from somewhere for a visit to the home of Mr. and Mrs. Everett Bonnell near Cedarvale. She drove a Plymouth coupé which belonged to one Jim Clark, who was then an escaped convict from the state penitentiary. Defendant was a former school acquaintance of Mrs. Bonnell. She told the latter that a "boy friend" would come for her. About 6 o'clock, before daylight, the morning after the sheriff of Ness county was shot, three men came to the Bonnell home. One of them was apparently wounded in the feet. He walked "rather funny" and there were drops of blood on the porch and near the tracks of the automobile in which he had come. Defendant left the Bonnell home with those three men in the coupé of Jim Clark. Later she was arrested in Oklahoma City, where she was living with Jim Clark. She was brought to Hodgeman county, and while in jail at that point she told the sheriff of Ness county that she had given Jim Clark $15 to buy a gun and $30 for expenses on some adventure he was about to undertake (the state's inference was that it was some projected felony), and that she thought one of the trio whom the sheriff had pursued on February 9 was Frank Delmar. She also said that Jim Clark told her it was Delmar who had reached for a gun during their pursuit by the sheriff, and that he, Jim Clark, was going to quit Delmar because he was too scared at anything he got into. Another witness for the state also testified that on the road between Jetmore and Ness City defendant told him the coupé she had driven to the Bonnell home belonged to Jim Clark, that she had nursed a gunshot wound in his foot, and that "she would do anything in the world for Jim Clark."

Do these facts support a verdict of conviction of the specific charge contained in the information? It read:

". . . On or about the 9th day of February, 1934, in the county of Ness and state of Kansas, Jim Clark, Frank Delmar, and John Doe did then and there unlawfully, feloniously, on purpose and of malice aforethought shoot with a deadly weapon, to wit: a gun loaded with powder and leaden balls, one Clayton Libby, sheriff of Ness county, Kansas, and did then and there assault the said Clayton Libby with intent to kill; and that one Goldie Johnson after the commission of the felony and crime as aforesaid, and knowing the said Jim Clark, Frank Delmar, and John Doe to have committed the felony and crime as aforesaid, did unlawfully and feloniously conceal and aid the said Jim Clark, Frank Delmar and John Doe with the intent and in order

that they might escape and avoid arrest, all of which is contrary to the statutes," etc.

There was no evidence that at the time defendant drove away from the Bonnell home with Jim Clark and his associates that defendant knew that the crime of shooting the sheriff of Ness county had been committed. Indeed the evidence does not show that Clark and his associates themselves knew that fact. There could be no criminal offense of concealing and aiding Clark, Delmar and Doe, or any of them, to escape, and to avoid arrest, without defendant's knowledge that they had committed some crime and that their arrest was sought therefor. The information charged that she concealed and aided them to escape and avoid arrest *knowing* that they had shot the sheriff. The court's instruction, which is the law of this case so far as the state is concerned, reads:

"In order to render one liable as an accessory after the fact, he must have actual knowledge at the time he assisted the principal, that the latter had committed a felony. Such knowledge must be personal as distinguished from constructive, but if the accused had actual knowledge of facts which would give him good reason to believe the person assisted to be guilty of a felony, this would be sufficient to prove actual knowledge."

It is useless to multiply words in this appeal. It was not shown, and under the facts and circumstances it could not be shown, that defendant knew that any of the trio had shot the sheriff, or that they had committed any other felony in Ness county on February 9, 1934, at the time she did whatever the state claimed she unlawfully and feloniously did do, and which the state construed to have been a concealing and aiding of the trio with intent that they should escape and avoid arrest for the crime of shooting the sheriff.

From the record it would appear that Goldie Johnson furnished Jim Clark with money to buy a gun and to pay expenses whereby he could go some place and commit some crime and that he might shoot somebody in the course of it, and that she arranged with him in advance to have his automobile in readiness at the Bonnell home in Chautauqua county to enable him to escape. If such was the arrangement she might be guilty as accessory *before* the fact of whatever crime Clark might have committed, but certainly not the alleged crime for which she was prosecuted and convicted.

The judgment is reversed, and the cause remanded with instructions to discharge the defendant.